JAMES McNAIR THOMPSON
SBN 67807
LAW OFFICES OF JAMES McNAIR THOMPSON
PO BOX 636
LOS GATOS CA 95031
(408) 358-6047
Attorney for Tracy Ann Valenzuela

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF CALIFORNIA,<br><br>  Plaintiff,<br><br>  vs.<br><br>TRACY ANN VALENZUELA<br><br>  Defendant | ) Case No.: CR 11 – 00471 DLJ<br>)<br>) DEFENDANT VALENZUELA'S<br>) RESPONSE TO GOVERNMENT'S<br>) BRIEF IN SUPPORT OF APPEAL OF<br>) MAGISTRATE JUDGE'S AMENDED<br>) ORDER ISSUED AUGUST 8, 2012<br>)<br>)<br>)<br>) |

## I.  INTRODUCTION

### A.  THE ISSUE PRESENTED

The government is appealing Magistrate Judge Grewal's order of August 8, 2012 denying its motion for reconsideration of his March 16, 2012 order insofar as it required the government to delete, destroy or return data outside the scope of the warrants pursuant to which certain computers were seized.

### B.  WHAT IS "OUTSIDE – OF – SCOPE" DATA?

It is commonplace that in contemporary America, citizens have a variety of files on their computers, including personal emails and correspondence, medical and

1   financial records, personal photographs and videos, and articles and reports of

2   political, religious or social significance.

3       As the Government's Brief In Support of Appeal of Magistrate Judge's

4   Amended Order Issued August 8, 2012 (hereinafter "Government's Brief") makes

5   clear, a number of search warrants were issued on the basis that some, but by no

6   means all, files on various computers may contain evidence of or instrumentalities

7   of a violation of 18 U.S.C. §1030 (and for which, on that basis, probable cause for

8   seizure existed);  because, the government explained, it was very difficult to figure

9   out which files were within the scope of the warrant, and which were not within the

10  scope of the warrant, the government sought permission to seize all the files on the

11  computer, and sort through them at a later time.[1]

12      The government now contends that it is actually entitled to keep all the

13  computer files, both those as to which it had probable cause for seizure, and those

14  as to which it never claimed probable cause, and which were outside the scope of the

15  warrant.

16

17

18  _____

19  [1] The government acknowledges that an Attachment C to the search warrants executed in defendant
    Valenzuela's home, and that of defendant Phillips, set forth specific time limits for searching seized
20  computers, with a command to delete, destroy or return any out-of-scope data with specific time
    limits.  This response is defendant Valenzuela's response, and she does not speak for any other
21  defendant.  However, the government's contention, at Government's Brief 2:3 – 4, that none of the
    other "warrants' attachments contained the same provisions about returning, deleting, or destroying
22  data that appeared in the warrants issued in this district. See Ex. 3-14" is, while technically true,
    misleading.  For example, while there may have been no Attachment C to the Covelli warrant, on
23  page 27 of the affidavit in support of the issuance of a search warrant, the government said, "Within
    a reasonable period of time, but not to exceed 60 calendar days after completing the forensic review
24  of the device or image, the government must use reasonable efforts to return, delete, or destroy any
    data outside the scope of the warrant unless the government is otherwise permitted by law to retain
    such data."  Similar language appears in the affidavit in support of a warrant to search Mr. Cooper's
25  home.  Other language in other warrants acknowledge the difference between computer files subject
    to seizure and those computer files which are outside the scope of the search warrants.

## C.  THE EVOLUTION OF THE ISSUE

The issue of the deletion, destruction or return of outside – the – scope data arose at the insistence of the government.  As is more fully explained below, defendant Valenzuela filed a motion for discovery of the relevant files from her computer and the computers of her codefendants.  Defendant Valenzuela expressly assumed that the government had complied with the mandate of Attachment C to delete, destroy or return all out-of-scope data.

The government interposed, as a reason it should not have to comply with this discovery request, that it had not in fact deleted, destroyed or returned the out – of – scope data, and that doing so would be very difficult.

In ruling on the discovery request, Magistrate Judge Grewal necessarily ruled on the government's defense to its discovery obligations, and said, "Turning to the government's obligation to segregate and disclose data seized in support of its investigation and prosecution,[footnote omitted] this Circuit has long held that the government is precluded from keeping seized documents that are outside the scope of the warrant. ,[footnote omitted]"  (Doc. 237 11:7 – 9)

In other words, the magistrate judge simply rejected the government's claim to keep the out – of – scope data as a defense to its discovery obligations.

## D.  THE SIGNIFICANCE OF THE ISSUE

If the government is allowed to keep the personal emails and correspondence, medical and financial records, personal photographs and videos, and articles and reports of political, religious or social significance of the defendants, none of which has it suggested it had probable cause to seize, one of two things necessarily follows.

On the one hand, the government will have computer files not disclosed to the defendants.  For example, defendant Valenzuela has absolutely no idea what

personal files were on defendant Collins' computer, and no interest in knowing what those files were.  However, if the government succeeds in arguing that the out – of – scope data is crucial to its case, and the personal files of the codefendants is not distributed to each defendant, then the government will be relying on secret evidence to obtain a conviction.

On the other hand, if the complete hard drive of each defendant is disclosed to all defendants, then personal and confidential information will be needlessly distributed to the defendants and the attorneys representing them, and the defendants will be buried in an avalanche of data which is unnecessary to a resolution of the case, trying to ascertain what is and what is not relevant.

## II.  STANDARD OF REVIEW

The government's motion is brought under Fed. R. Crim. P. 59.

The government admits that "this Court referred the parties' discovery dispute to Magistrate Judge Grewal. Doc. 211 at 2." (Government's Brief 2:24 – 25.)

Fed. R. Crim. P. Rule 59(a) addresses situations in which the district judge refers "to a magistrate judge for determination any matter that does not dispose of a charge or defense."

Fed. R. Crim. P. Rule 59(a) sets forth the standard of review when a party demands district court review of a magistrate judge's ruling on a non-dispositive issue:

> The district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous.

Unless a party can establish that the magistrate judge's decision is "contrary to law or clearly erroneous," the party is not entitled to any relief.  Here, the

government has not established that Magistrate Judge Grewal's order was "contrary to law or clearly erroneous."

Evidently realizing the futility of arguing that the order was "contrary to law or clearly erroneous," the government attempts to characterize this "appeal" as an objection to an order made pursuant to a Fed. R. Crim. P. Rule 41 motion, and therefore concludes it should be reviewed *de novo* under Fed. R. Crim. P. Rule 59(b).

Defendant Valenzuela will have more to say about why this was never a Rule 41 motion below, but at this point objects to the government raising this argument for the first time in this brief.  The Government admits, in fact, that it "did not raise these jurisdictional concerns during proceedings before the magistrate judge. Indeed, when defendants argued that the magistrate judge lacked jurisdiction to entertain the government's motion for reconsideration, the government responded that '[t]his issue has properly been before the Magistrate Court for some time.'" (Government's Brief, page 6, footnote 4)

The government litigated the issue of the out – of – scope computer files in response to defendant Valenzuela's discovery motion, sought to relitigate the issue on different grounds in its motion for reconsideration, and now seeks to litigate the issue on a third basis in its objections to the order.

### III.  THE GOVERNMENT HAS OFFERED NO EXPLANATION AS TO WHY IT IS NOT PROCEDURALLY BARRED FROM RELIEF

As Magistrate Judge Grewal held, "Each of the grounds offered by the government either was presented or could have been presented months ago, before the court issued its March 16 ruling. On this procedural basis alone, the government's request is deficient." (Doc. 311, at page 2, lines 13 – 15)

1   This portion of the order is patently not "contrary to law or clearly

2   erroneous."

3       The government has made no effort to suggest that Magistrate Judge Grewal

4   is wrong about this, and on this basis alone the court must deny the government's

5   objections, such as they are.[2]

6   Civ. L.R. 7 – 9(b) provides:

7           A motion for leave to file a motion for reconsideration must be
        made in accordance with the requirements of Civil L.R. 7-9. The
8       moving party must specifically show:
                (1)   That at the time of the motion for leave, a material
9       difference in fact or law exists from that which was presented to
        the Court before entry of the interlocutory order for which
10      reconsideration is sought. The party also must show that in the
        exercise of reasonable diligence the party applying for
11      reconsideration did not know such fact or law at the time of the
        interlocutory order; or
12              (2)   The emergence of new material facts or a change of
        law occurring after the time of such order; or
13              (3)   A manifest failure by the Court to consider material
        facts or dispositive legal arguments which were presented to the
14      Court before such interlocutory order.

15      As Magistrate Judge Grewal's order makes express, there was no "material

16  difference in fact or law […] from that which was presented to the Court" which

17  could not have been presented through "the exercise of reasonable diligence," and

18  the government has not identified any "emergence of new material facts or a change

19  of law occurring after the time of such order."

20      Although there was NOT a "manifest failure by the Court to consider

21  material facts or dispositive legal arguments which were presented to the Court

22

23  [2]In addition to substantial briefing on the Motion for Reconsideration, the Magistrate Judge
    entertained oral argument for 49 minutes. (Doc. 301) The government has not attached a transcript
24  of this argument, and is thus asking this court to find that the Magistrate Judge made a finding that
    "[e]ach of the grounds offered by the government either was presented or could have been presented
25  months ago, before the court issued its March 16 ruling" is unsupported on the basis of an
    incomplete record.

before such interlocutory order," the decision by the government to not supply a transcript of the 49 minute argument leaves a record from which the district court cannot fully assess the "material facts or dispositive legal arguments which were presented …" to Magistrate Judge Grewal.  However, the government seems here to be arguing that it wishes to present "legal arguments" which it admits it never made to Magistrate Judge Grewal.  This can hardly be the basis of a finding that Magistrate Judge Grewal failed to consider legal arguments never made.

In short, the government has not and cannot establish that Magistrate Judge Grewal's holding that the government was procedurally barred from relief by Civ. L.R. 7 – 9(b) was "contrary to law or clearly erroneous."

## IV.  THE GOVERNMENT CANNOT TRANSFORM THE PROCEEDINGS BELOW INTO A RULE 41(g) MOTION BY SIMPLE FIAT

The government has persistently attempted to mischaracterize defendant Valenzuela's discovery motion as a "Motion to Segregate Data" (see, for example, Doc. 287, page 2:1 through 8:19)

Now, the government has decided that defendant Valenzuela's discovery motion was not a "Motion to Segregate Data" after all, but a motion under Fed. R. Crim. P. Rule 41(g) for "return of data."

The government can call defendant's discovery motion whatever it likes, but it was a discovery motion.

The defendant never asked for the return of data.[3]

In fact, in opposing the government's Motion for Reconsideration, defendant Valenzuela said, "On June 14, 2012, the government filed a motion, styled a motion

---

[3]  Defendant did ask for the return of her computer, with or without the data on it.  The magistrate judge properly declined to rule on that, and defendant Valenzuela did not seek reconsideration of that portion of the order.

1   for reconsideration, asking to be relieved of its obligation to seize only the

2   responsive data and to destroy or return the non – responsive data." (Doc. 287 12:6

3   – 8)

4           It was at all times defendant Valenzuela's position that the government was

5   obliged by the terms of the search warrant itself, and Attachment C thereto, to "to

6   return, delete, or destroy any data outside the scope of the warrant…"

7           The government clearly understood that its obligation under the order in

8   question was not to return the non-responsive data pursuant to Rule 41(g), but

9   rather to destroy, delete or return the data pursuant to the terms of the search

10  warrant.

11          In its Motion for Leave To File Motion for Reconsideration, the government

12  premised its entire argument on the claimed difficulty of its efforts "to comply with

13  the 'deletion/destruction' aspect of the Court's March 16, 2012 Order." (Doc. 265

14  2:19 –20)  The government complained that "that there are significant technical

15  difficulties related to the proposed deletion." (*Id.* 2:23 – 24)  The basis upon which

16  the government sought reconsideration was that "the SVRCFL has determined that

17  there are multiple technical issues related to the deletion of the electronic

18  information purportedly outside the scope of the warrants which will impact the

19  integrity of the data."

20          The parties, and the court, understood at all times that no part of the

21  discovery motion was a motion by "person aggrieved by an unlawful search and

22  seizure of [data] or by the deprivation of [data …] for the [data's] return." Fed. R.

23  Crim. P. Rule 41(g)

24  **V.  IT IS THE GOVERNMENT, NOT THE DEFENDANTS, WHO INTERJECTED**
    **THE ISSUE OF THE DELETION OF THE NON-RESPONSIVE DATA INTO**
25  **DEFENDANT VALENZUELA'S DISCOVERY MOTION, AND THE**

### GOVERNMENT CANNOT COMPLAIN THAT THE MAGISTRATE JUDGE RULED ON AN ISSUE RAISED BY THE GOVERNMENT ITSELF

Defendant Valenzuela moved for an order compelling discovery of the relevant portions of the computers seized from her and those with whom she is alleged to have conspired. Doc. 192.  In that motion, she said

> Since the government has presumably acted in lawful compliance with the conditions under which the search was authorized, it has already segregated the pertinent from the non-pertinent data, deleted or destroyed the non-pertinent data on its copies or mirrors, and is prepared to distribute the pertinent data to the defendants so that they may prepare for trial. (Doc 192 11:20 – 24)

Defendant Valenzuela obviously was not seeking an order to compel the government to do that which she expressly presumed the government had already done.

The government then interjected the issue in its Opposition to Defendants' Discovery Motions and Motions to Modify Terms of Pretrial Release.  Under the heading "The Government May Retain Defendants' Computers And Digital Devices And Complete Forensic Images Of Those Computers And Devices," the government argued at length that it was under no obligation to comply with the requirement of the search warrant that it delete, destroy or return non-pertinent data. (See Doc. 223 4:16 – 6:5)

The issue was interjected by the government as a reason it should not have to comply with its discovery obligations (it was too complicated), and thus was necessarily resolved, at the government's insistence, by the magistrate judge in ruling on the defendant's discovery motion.

That it was resolved adversely to the government does not strip the magistrate judge of jurisdiction to decide the issue in this context.[4]

## VI.  THE GOVERNMENT IS NOT "OTHERWISE PERMITTED BY LAW" TO RETAIN COMPLETE FORENSIC IMAGES OF COMPUTERS SEIZED PURSUANT TO THE WARRANTS

### A.  RULE 41 DOES NOT OVER-RIDE THE EXPRESS TERMS OF THE SEARCH WARRANT

The government argues that the language in Attachment C to the warrant authorizing the search of defendant's home that all data which was not described in Attachment B (out – of – scope data) be deleted, destroyed or returned within a specific time was simply meaningless surplusage. (See Government's Brief 8:9 – 12:1)

It argues that Rule 41(f)(1)(B) makes the language of the warrant signed by Magistrate Judge Lloyd meaningless "[b]ecause Rule 41 therefore authorizes the government to retain complete copies of the forensic images created pursuant to the search warrants in this district, and not just copies of data that was 'seized,' the warrants do not require the government to return, delete, or destroy any data on those images."  (Doc. 333 8:22 – 26)

This argument is frankly unprincipled.

Special Agent Trombetta swore under oath in a declaration submitted to Magistrate Judge Lloyd in support of the government's request for a warrant to search defendant Valenzuela's home

> Within a reasonable period of time, but not to exceed 60 calendar days after completing the forensic review of the device or image, the government must use reasonable efforts to return, delete, or

---

[4] Can there be any doubt that had the magistrate judge ruled in favor of the government on this issue, the government would assert that the ruling was completely within the magistrate judge's jurisdiction to resolve all issues necessary to decide the discovery motion?

destroy any data outside the scope of the warrant unless the government is otherwise permitted by law to retain such data. (Doc. 283 p 13)

Now, the government argues that Special Agent Trombetta's declaration did not mean what it said, because Fed. R. Crim. P. Rule 41 says that no matter what a magistrate judge says, the government can do as it pleases with the out – of – scope data.

If it is the position of the United States Attorney's Office that retention of out – of – scope data is *always* permitted by law, it should straightforwardly say so, rather than hiding this assertion inside a claim that it will "use reasonable efforts to return, delete, or destroy any data outside the scope of the warrant."

Rule 41 does not give the government the right to retain the out – of – scope data.  It merely addresses the issuance of warrants precisely like the one at issue in this case.

### B.  *UNITED STATES V. BEUSCH* DOES NOT MAKE THE RETENTION OF OUT – OF – SCOPE DATA "OTHERWISE PERMITTED BY LAW"

The government argues that the holding of *United States v. Beusch*, 596 F.2d 871 (9th Cir. 1979) means that all of the data on the defendant's harddrive is subject to retention and none of it is subject to deletion or destruction.

The government quotes *Beusch* for the proposition that there is "no authority for the proposition that pages in a single volume of written material must be separated by searchers so that only those pages which actually contain the evidence sought may be seized." Doc. 333 10:10 – 12

The government then asserts, as if it was incontrovertible, that a computer harddrive is "a single volume."

Once again, this is directly in opposition to everything that the government said to Magistrate Judge Lloyd, when it explained to Magistrate Judge Lloyd that a harddrive consisted of a number of discreet files, as to some of which there might exist probable cause to seize and as to others, there was no such probable cause.

Here, Special Agent Trombetta's declaration explains that some files on a hard drive are within the scope of the warrant, and some are not:

> Searching computer systems for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, it may be possible for the search team to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. For example, the search team may be able to execute a "keyword" search that searches through the *files* stored in a computer for special words that are likely to appear only in the materials covered by a warrant. Similarly, the search team may be able to locate the materials covered in the warrant by looking for particular directory or *file* names. In other cases, however, such techniques may not yield the evidence described in the warrant. Computer users can mislabel or hide *files* and directories; encode communications to avoid using key words; attempt to delete *files* to evade detection; or take other steps designed to frustrate law enforcement searches for information. These steps may require the search team to conduct more extensive searches, such as scanning areas of the disk not allocated to listed *files*, or <u>opening every *file* and scanning its contents briefly to determine whether it falls within the scope of the warrant.</u> (Doc. 283 pp 9 – 19; emphasis added)

Once again, it is troubling to see the government argue that a computer harddrive consists of a number of files, some of which are responsive to the warrant and many of which are out – of – scope when that suits it, and argue that it is all just one great big "ledger" when that suits it.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**C.  THE GOVERNMENT ADVANCES ARGUMENTS THAT IT IS "OTHERWISE PERMITTED BY LAW" TO RETAIN THE OUT-OF-SCOPE DATA WHICH WERE NEVER MADE TO THE MAGISTRATE JUDGE**

It is theoretically impossible for the magistrate judge to have made an order which was ""contrary to law or clearly erroneous" in disposing of an argument never made.

Magistrate Judge Grewal did correctly dispose of the government's argument that it was "otherwise permitted by law" to retain the out – of – scope data:

> Turning to the government's obligation to segregate and disclose data seized in support of its investigation and prosecution,[footnote omitted] this Circuit has long held that the government is precluded from keeping seized documents that are outside the scope of the warrant. [footnote omitted] This basic principle was only recently affirmed by the Ninth Circuit in the specific context of electronic documents seized from computers and other storage media. [footnote omitted] Many of the warrants in this case specifically acknowledge the government's return obligation by providing that "[w]ithin a reasonable period of time, but not to exceed 60 calendar days after completing the forensic review of the device or image, the government must use reasonable efforts to return, delete or destroy any data outside the scope of the warrant unless the government is otherwise permitted by law to retain the data." While the government emphasizes the final clause of this provision, even if the law ultimately permits the forfeiture of a given device as discussed above, under *Tamura* and *CDT* the law does not permit the retention of data on that device that has not been shown or even alleged to have been an "instrumentality" of the alleged crimes. Nor does the law permit the retention of data outside the scope of the warrant for identification, authentication or chain-of-custody purposes. That argument has been specifically rejected in this district in *United States v. Lu*: "[t]he government, however, shall not be retaining images of file documents that, in large part, do not contain information within the scope of the warrant." (Doc. 237 11:7 – 12:11, citing *United States v. Lu*, Case No. CR 09-00341 RMW (N.D. Cal. Sept. 9, 2010) (Docket No. 12 at 4 (citing Tamura)))

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## VII.  THERE IS NOTHING UNREASONABLE ABOUT THE EFFORT REQUIRED TO DELETE THE OUT—OF—SCOPE DATA

The government complains that "the efforts that the magistrate judge ordered the government to undertake – i.e., redacting any data on the images that is outside the scope of the warrant – are not reasonable." (Government Brief 11:10 – 12)

On May 15, 2012, the government filed a Motion for Leave to File a Motion for Reconsideration of Magistrate Judge Grewal's order, and the government said, "with the exception of the electronic information seized from defendant Joshua Covelli, [the government] has provided copies, segregated by defendant, of the electronic information determined to fall within the scope of the search warrants to Mr. Aoki to be shared by all defendants and defense counsel." Doc 265 2:11 – 14.

Having preserved the data responsive to the search warrant, the government need do no more than delete the mirrored images, delete everything on the seized computers, and proceed with same set of pertinent files as has been provided to the defense.

The government's opposition to this simple solution is that "such redactions would effectively result in the suppression of evidence within the scope of the warrants by requiring the government to return or delete the very evidence that the government needs to secure convictions in this case: functioning copies of the LOIC program that the government can demonstrate to the jury to prove that the defendants actually used this software to launch DDoS attacks on PayPal." (Government Brief 11:23 – 12:1)

This argument is transparently pretextual both in the specific and the general.

The government specifically announces an intention to launch a denial of service attack on PayPal during the trial, which makes no sense.  Presumably, it will instead call experts to explain the capability of the files on the computers of the various defendants to launch such an attack.

Generally, the concept that real evidence has to be operational in order to have persuasive force with jurors is ludicrous.

Surely the government has a great deal of experience trying cases in which firearms are unloaded and secured with a trigger – lock, without having jurors reject the evidence because nobody fired the weapon in the courtroom.

## VIII.  THE GOVERNMENT'S DISCUSSION OF DEFENDANT VALENZUELA'S MOTION TO SUPPRESS EVIDENCE

The government discusses the defendant's motion to suppress and the court's ruling on that motion.

Presumably, it did so in order to note that part of the court's holding which said that the defendant's laptop was a forfeitable instrumentality of the crime which the government was entitled to retain. (Doc. 333 8:6 – 7; Government Brief 5:6 – 7)

This does nothing to further the government's argument because, as Magistrate Judge Grewal held, "even if the law ultimately permits the forfeiture of a given device as discussed above, under Tamura and CDT the law does not permit the retention of data on that device that has not been shown or even alleged to have been an 'instrumentality' of the alleged crimes." Doc 237 12:4 – 7

However, there is another aspect of the Government Brief which bears upon the defendant's motion to suppress.

1    In her motion to suppress, defendant Valenzuela argued that the "search of

2  the computer, and seizure of data, after the time expired was warrantless, and thus

3  unreasonable, and the fruits of that untimely search and seizure must be

4  suppressed."  Doc 280 2:18 – 20

5    Defendant argued that the government "did not seize the data and files

6  within the time allotted, and that therefore any seizure of such data and files was

7  warrantless, unreasonable and in derogation of her rights under the Fourth

8  Amendment of the United States Constitution." Doc 280 14:23 – 15:2

9    Quite aside from the question of when the defendant's harddrive was

10  mirrored, the defendant argued, "the government had until August 28, 2011 to seize

11  the data responsive to the warrant and delete, destroy or return the non—

12  responsive data. However, the government did not even attempt to seize the

13  responsive data and delete the non—responsive data until May 14, 2012, and

14  defendant is informed and believes that it still has not accomplished this necessary

15  task."  (Doc 286 6:8 – 12)

16    The defendant asserted

17    The fact that the warrant, through the operation of Attachment
18  C, allowed the government 120 days to seize the data described in
    Attachment B and therefore within the scope of warrant by identifying
19  that data and separating it from data outside the scope of the warrant,
    even if extended by 60 days, does not give the government license to
20  seize any data after that date.

21    If the government's position is that it seized the data within the
    scope of the warrant on the date it walked off with defendant's lap top,
22  then the government is arguing either that it acted outside the scope of
    the warrant, or that the warrant was a general warrant because
23  Attachment B was merely non-binding surplusage. (Doc 286 11:10 –
    18)

24

25

For reasons which are not entirely clear, the government now argues "that 'copying' electronic data does not necessarily constitute a seizure of that data." Government's Brief 9:5

This is precisely the argument that the defendant made in her motion to suppress; even if the computer was removed from defendant's home pursuant to the warrant, and even if the harddrive was mirrored within the time permitted by the warrant,[5] the failure to segregate the data responsive to the warrant from data out –of – scope, and delete, destroy or return the out – of – scope data within the time limits meant that the responsive data was not seized within the time limits, and that therefore the seizure of that data was warrantless.

Now that the government agrees with the defendant that the data was not seized when the harddrive was copied, the defendant reserves the right to seek reconsideration of the motion to suppress if the court agrees with the government on this point.

## IX.  CONCLUSION

This court should uphold the order of Magistrate Judge Grewal denying the government's motion for reconsideration and, in order to resolve any lingering confusion on the part of the government, order it to delete or destroy any out – of – scope data within 30 days, by deleting all data on all computers and erasing all mirrored images if necessary, but allowing the government to keep copies of the data within the scope of the warrants in the form distributed to the defendants.

---

[5] A fact contested by the defendant but assumed for this portion of the argument.

1    Dated:  September 9, 2012

2

3    Respectfully submitted,

4

5

6

7    James McNair Thompson

8    Attorney for defendant Valenzuela

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25